SYVILLIA HOVERMALE

*v.*

BERKELEY SPRINGS MOOSE LODGE No. 1483

(No. 14754)

Decided October 7, 1980.

William B. Carey for appellant.

Martin & Seibert, Clarence E. Martin, Jr. and Clarence E. Martin, III for appellee.

McGRAW, JUSTICE

Syvillia Hovermale, plaintiff below, appeals from an order of the Circuit Court of Morgan County granting the defendant below, the Berkeley Springs Moose Lodge No. 1483, its motion for a directed verdict in this wrongful death action. In addition to her contention that the trial court took from the jury an issue of fact, the appellant asks us to review certain jury instructions involving, respectively, the standard of care owed to an invitee, the credibility of certain medical testimony, and the issue of contributory negligence. She also appeals from an order denying her motion for a new trial based upon newly discovered evidence. We find merit in several of the appellant's contentions and award her a new trial.

During the evening of June 2, 1974, the appellant's decedent, Charles Watson Hovermale, stopped at the Berkeley Springs Moose Lodge to have a drink with his fellow Moose. While standing at the bar talking with friends, Hovermale collapsed and fell to the floor. Two patrons, fellow Moose members, picked Hovermale up from the floor. One of the bartenders on duty instructed them to take him out to his car to "sleep it off." Although there is some conflict in the evidence, it appears that Hovermale consumed one drink and was starting another when he collapsed.

The brothers grabbed Hovermale under each arm and supported him out to the parking lot. They asked him which car was his but his responses were mumbled and unintelligible. After ascertaining his vehicle, the two patrons placed him in the front seat and asked him to tuck his feet up so that they could close the door. This he did. After rolling the window down halfway, the patrons returned to the bar and informed the bartender of their actions. When the Moose Lodge closed for the evening, the bartenders went to the parking lot where the only cars there were their own and Hovermale's. They left that night without checking his condition.

About 7:15 the next evening, several employees and members of the Moose discovered Hovermale's body in

the front seat of the vehicle. According to the medical testimony, he died of a coronary thrombosis, a heart attack, sometime within two to five hours after being placed in the vehicle.

The first trial of the case resulted in a hung jury. Sensing that the jury's inability to reach a verdict may have resulted from the close ties between the local community and the Moose, the trial judge prudently moved the retrial from Morgan County to Jefferson County. Prior to the case going to the jury in the second trial, the appellee moved the court to grant a directed verdict on the grounds that the evidence of negligence produced by the appellant was insufficient to go to the jury. The court reserved ruling on the motion. After the jury in the second trial was unable to reach a verdict, the motion was renewed and granted.

The appellant's first assignment of error is that the trial court should have imposed a high duty of care on the Moose rather than the ordinary duty of care the trial court found proper. In his order directing a verdict, the trial judge defined the legal status of Hovermale as an invitee. As such, the agents, employees, servants and membership of the Moose owed to him an ordinary degree of care. This is indeed a correct statement of the rule in this jurisdiction. *Puffer v. The Hub Cigar Store, Inc.*, 140 W.Va. 327, 84 S.E.2d 145 (1954). The acts constituting ordinary and reasonable care, however, are commensurate with the circumstances. *Dicken v. Liverpool Salt & Coal Co.*, 141 W.Va. 511, 23 S.E. 582 (1895). A definition of reasonable and ordinary care in this circumstance is best set out in the Restatement (Second) of Torts, § 314A (1965) which states that a possessor of lands open to the public who enter in response to its invitation to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.[1]

---

[1] While we note that Moose is a private organization and, at the time of Hovermale's death, was open to members and guests only,

We are influenced by the Wisconsin court. It applied the Restatement standard in *Lloyd v. S. S. Kresge Co*, 85 Wis.2d 296, 270 N.W.2d 423 (1978). There the plaintiff was doing business at the defendant's store when she was informed by store employees it was closing time and she would have to leave. She informed the employees she had developed a cold and a fever and asked if she could stand between the exit door and the inner door while she waited for her ride. She further explained to them there was a possibility she would be chilled to the bone unless she could stand in the foyer. The employees insisted she leave while they closed the store. She did wait outside for five to ten minutes as a result of the employee's request. Subsequently, she brought suit to recover damages she allegedly suffered as a result of exposure to the elements. The trial court granted the defendant's motion for summary judgment and the plaintiff appealed. The Wisconsin court cited Restatement standard and reversed the lower court, holding that a proprietor owes a duty to render aid when he knows or should know an invitee is in need of attention.

The rule is not new. In the 1907 case of *Depue v. Flateau*, 100 Minn. 299, 111 N.W. 1 (1907), the Minnesota court also confronted a fact situation similar to the one before us. There the plaintiff, who was transacting business during dinner at a farmhouse some distance from his own, fell violently ill and collapsed on the floor. The defendants refused to permit him to stay at their farm and instead, placed him in his wagon and started the horses drawing it toward his home. The plaintiff was found the next morning in an advanced state of ill health due to exposure. The court held that since he was an invitee, the defendants owed him a duty, upon discovering his illness, to exercise reasonable care in their own conduct not to expose him to danger by sending him away from their house.

---

that does not destroy Hovermale's status as an invitee. The beverages dispensed at the club generate a profit and presumably Hovermale's attendance was mutually beneficial.

There is also a large body of case law to this effect. Some cases deal with common carriers, *see e.g., Korn v. Tamiami Trail Tours, Inc.*, 89 Miss. 308, 42 So. 286 (1906) and others with traditional businesses, *Baca v. Baca*, 81 N.M. 734, 472 P.2d 997 (1970); *Delvin v. Safeway Stores*, 235 F.Supp. 882 (S.D.N.Y. 1964); *Zelenko v. Gimbel Bros., Inc.*, 158 Misc. 904, 287 N.Y.S. 134 (1935). While the cases involving common carriers speak in terms of a high duty of care, others, similar to the case at bar, require only the exercise of reasonable and ordinary care. We conclude, therefore, that the trial court correctly instructed the jury that a proprietor is under an ordinary duty of care to render aid to an invitee after he knows or has reason to know the invitee is ill or injured.

The appellant's second contention is the trial court incorrectly ruled that she produced no facts upon which the jury could find that the agents of the Moose Lodge breached the aforementioned duty. We agree.

At trial testimony was adduced to the effect that a layman, and perhaps a physician, could not have foreseen that Hovermale was having a heart attack. The appellee, relying on the foreseeability rule laid down in *Puffer v. The Hub Cigar Co., supra*, argued that since no one could distinguish between intoxication and a heart attack, it was not foreseeable that Hovermale's collapse was the result of anything more than intoxication. The trial judge embraced this argument and ruled that because it was impossible to make such a distinction, no duty arose upon which to base a breach. This rationale, however, confuses rather than illuminates the distinction between the existence of a duty as a matter of law and the breach of a duty as a question of fact. The trial court's use of the word "foreseeability" is unfortunate here because it obscures the distinction between the event giving rise to the duty to render aid and the duty itself.

In the context of forseeability, *Puffer, supra*, stands for the proposition that a proprietor is not an insurer and as such should not be held responsible for events

over which he has no control and could not reasonably foresee. While this undoubtedly is a correct statement of the law, it is not applicable to the facts of this case. Here, the appellant makes no claim that the Moose could foresee Hovermale's heart attack or was responsible for it. She only asked the jury to find that the appellee breached the duty to render aid which arose once the attack occurred. The question thus becomes one of the reasonableness of the acts of the Moose with regard to that duty[2].

In the order directing the verdict, the trial court may well have meant, in light of the evidence that Hovermale was drinking, that no reasonable man would have had reason to know Hovermale was in need of care.[3] Such an inquiry, however, is more properly left with the jury, especially when the facts are in dispute, or when not in dispute, are such that reasonable men may draw different conclusions from them. We have often held that questions of negligence are for the trier of fact when the evidence is conflicting or when the facts, although undisputed, are such that reasonable people may draw different conclusions from them. *Bradley v. Sugarwood, Inc.*, ___ W.Va. ___, 260 S.E.2d 839 (1979); *Sullivan v.*

---

[2] In *Puffer*, this Court set aside a verdict for a plaintiff injured when a drunk fell upon him while the plaintiff was sitting at the defendant's lunch counter. We there held no facts were adduced which could have put the defendant on notice the plaintiff was going to be injured. We note from that case, however, that after the plaintiff was injured an ambulance was summoned and the manager of the establishment accompanied the plaintiff to the hospital. Once the duty to render aid arose as the result of an unforeseeable cause, the defendant in *Puffer* fulfilled that duty.

[3] We note with interest the case of *Middleton v. Whitridge*, 213 N.Y. 499, 108 N.E. 192 (1915). There a train conductor failed to render aid to a passenger suffering from a stroke. The conductor assumed the man was drunk. The New York court stated:

[t]he case turns, not on what the conductor assumed or thought, but on what he should, in the exercise of reasonable prudence, have done in light of the facts which were brought to his notice. . . . The fault of the conductor was not in making the wrong diagnosis, but in rashly assuming that he was competent to make any diagnosis at all. 108 N.E. at 197.

*Billey*, 163 W.Va. 445, 256 S.E.2d 591 (1979). In the instant case Hovermale appeared sober, although the bartenders were in conflict as to the number of drinks he consumed. The record is replete with testimony from which a reasonable person could deduce that Hovermale was reacting to something other than intoxicants. Accordingly, the trial court erred in taking these questions of negligence from the jury.

The appellant also maintains that the trial court erred in instructing the jury that it could only find for the plaintiff if it found the evidence established to a reasonable medical certainty that Hovermale would have survived had he received prompt medical attention. A physician testified that there was a reasonable probability that Hovermale would have survived had he promptly received medical attention but that nothing in medicine is certain. The physician's discomfort with the use of the word "certainty" (apparent during examination by the trial court) appears to be the result of semantics rather than substance.

The trial court's ruling that West Virginia requires medical testimony in terms of reasonable medical certainty may have resulted from a misunderstanding of our discussion in *Duling v. Bluefield Sanitarium*, 149 W. Va. 567, 142 S.E.2d 754 (1965). In *Duling* we approved as valid and nonspeculative the testimony of a physician who felt sure enough to testify in terms of medical certainty. That case, however, should not be read as requiring testimony in those terms.

In Syllabus Point 1 of *Pygman v. Helton*, 148 W.Va. 281, 134 S.E.2d 717 (1964), we made it clear that where a physician is testifying as to the causal relation between a given physical condition and the defendant's negligent act, he need only state the matter in terms of a reasonable probability.

> Medical testimony to be admissible and sufficient to warrant a finding by the jury of the proximate cause of an injury is not required to

> be based upon a reasonable certainty that the injury resulted from the negligence of the defendant. All that is required to render such testimony admissible and sufficient to carry it to the jury is that it should be of such character as would warrant a reasonable inference by the jury that the injury in question was caused by the negligent act or conduct of the defendant.

*Pygman* specifically rejected the requirement that the physician tie the injury to the negligence by way of a reasonable degree of medical certainty and eschewed any rigid incantation or formula as it quoted at considerable length from *Bethleham-Sparrow Point Shipyard, Inc. v. Scherpenisse,* 187 Md. 375, 50 A.2d 256 (1946), including this statement:

> ... his opinion is admissible in evidence as to the cause which produced or probably produced, or might have produced, a certain physical condition the opinion of an expert as to the probability, or even the possibility, of the cause of a certain condition may frequently be of aid to the jury, for when the facts tend to show that an accident was the cause of the condition, the assurance of an expert that causal connection is scientifically possible may be helpful in determining what are the reasonable inferences to be drawn the facts. *See also Charlton Brothers Transportation Company v. Garrettson,* 188 Md. 85, 51 A.2d 642; *Oklahoma Natural Gas Company v. Kelly,* 194 Okla. 646, 153 P.2d 1010.

*See also Serbin v. Newman,* 157 W.Va. 71, 198 S.E.2d 140 (1973).

*Pygman* did note the distinction that exists in our law between proof of the causal relation of the injury to the negligent act and the different question of proving the necessity for future medical, hospital expenses and the injured party's pain and suffering. Because these are future events, we have required the medical expert to give his opinion on these questions to a reasonable degree of medical certainty. We stated in *Pygman*:

[t]hough it is necessary to establish future pain and suffering and reasonable and necessary expense of medical and nursing services to be incurred in the future by medical testimony that there is reasonable certainty that such pain and suffering will result and such expenses will be incurred, *Shreve v. Faris*, 144 *W. Va.* 819, 111 *S.E.2d* 169, 15 *Am.Jur.*, Damages, Sections 73 and 139, and the numerous cases cited in the *Shreve* case, there is no such requirement with respect to the admissibility of sufficiency of medical testimony concerning the proximate cause of an injury.

Accordingly, we find that the trial court erred in not following the *Pygman* standard, when he required the doctor to testify concerning the proximate cause of the injury to a reasonable degree of medical certainty.[4]

The appellant's fourth contention is that the trial court erred in giving an instruction concerning contributory negligence. The gist of the instruction was that if the jury found Hovermale's intoxication contributed to the death of the deceased, then it could find for the defendant. Our review of the evidence reveals nothing upon which to base the giving of such an instruction. Having a heart attack is not contributory negligence. The trial court noted as much. It is of no moment to the question of contributory negligence that the appellees may have assumed Hovermale was drunk. The evidence of intoxication goes to the jury question of whether the

---

[4] While dicta by the majority reflects the view that medical testimony, as it relates to future damages, must be couched in terms of "reasonable certainty", this distinction is unnecessary for this case. We said in *Graves v. Katzen*, 112 W.Va. 467, 164 S.E. 796 (1932), that "[a] medical expert, properly qualified, may testify as to the probable future consequences of an injury, provided the consequences anticipated are such as in the ordinary cause of events may reasonably be expected to happen, and are not merely speculative or possible." Syl. pt. 1, *Graves v. Katzen, supra*. Proof by a preponderence of the evidence requires only that a party satisfy the court or jury by sufficient evidence that the existence of a fact is more probable or likely than its nonexistence. The testimony of experts should not have to meet a higher standard and the court's instructions should reflect this.

Moose should have known, in the exercise of reasonable care, that the deceased was in need of attention. Because we are not confronted with a situation where the appellant claims the Moose was responsible for the heart attack, the question of contributory negligence based on the alleged intoxication of the decedent is irrelevant. We have held repeatedly that an instruction should not be given when there is no evidence tending to prove the theory upon which the instruction is based. *State v. Wayne*, 162 W.Va. 41, 245 S.E.2d 838 (1978); *State v. Wilson*, 145 W.Va. 261, 114 S.E.2d 465 (1960); *Wilson v. Edwards*, 138 W.Va. 613, 77 S.E.2d 164 (1953). Accordingly, the trial court erred in instructing the jury on contributory negligence when there was no evidence to support such an instruction.

In her prayer for relief the appellant asks us to order this case retried in one of our large urban centers. This is a request for a change of venue and as it was not raised below or assigned as error, we are unable to deal with it. Such a request is properly made of the trial court. The appellant may avail herself of such an option by proper motion made upon the retrial of the cause.

The appellant's final contention is that the trial court erred in refusing to vacate the order for a directed verdict pursuant to motions made under Rules 59 and 60 of the West Virginia Rules of Civil Procedure in light of new evidence discovered after the order. Because we are awarding the appellant a new trial, we find it unnecessary to address this argument.

The appellee raises two cross-assignments of error relating to the trial court's refusal to give certain instructions. The appellee requested an instruction which incorporated West Virginia's so-called "Good Samaritan" statute,[5] *W. Va. Code* 55-7-15. This statute was designed

---

[5] *W. Va. Code* 55-7-15:

"No person, including a person licensed to practice medicine or dentistry, who in good faith renders emergency care at the scene of an accident, without remuneration, shall be liable for any civil damages as the result of any act or omission in rendering such emergency care."

to encourage those persons owing no duty to render aid in emergency circumstances. It was not intended to relieve one of liability for the breach of a pre-existing duty. For this reason the instruction was inapplicable to the facts of the case. The trial judge also correctly refused to give an instruction for the appellee which would have told the jury it could not find for the plaintiff unless it found that the heart attack occurred on the premises of the Moose, that it should have been reasonably foreseeable, and that the defendant was guilty of willful or wanton negligence. This instruction was correctly refused because the standard of care owed to an invitee includes ordinary negligence as well as willful and wanton negligence. *Burdette v. Burdette*, 147 W.Va. 313, 127 S.E.2d 249 (1963); *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966).

We hold, therefore, that while the trial court correctly instructed the jury as to the standard of care owed to an invitee, it improperly took from the jury the factual question of whether the appellees met this standard of care. The trial court also erroneously instructed the jury concerning the credibility of medical testimony and committed error by giving the jury a contributory negligence instruction. For the reasons stated herein, we reverse the ruling of the circuit court of Morgan County directing a verdict for the appellee and award the appellant a new trial.

*Reversed, new trial awarded*