916 F.2d 970
 Prod.Liab.Rep.(CCH)P 12,629
Tyressa Jane ROHRBOUGH, an infant who sues by Donald E.
Rohrbough, her parent and next friend, and Donald
E. Rohrbough and Debby S. Rohrbough,
individually, Plaintiff-Appellant,
v.
WYETH LABORATORIES, INC., a corporation, Defendant-Appellee,
United States of America, Amicus Curiae.
 No. 89-3315.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 8, 1990.
Decided Oct. 23, 1990.
 
 Jerald Elton Jones (argued), Kathryn K. Allen (on brief), West & Jones, Clarksburg, W.Va., for plaintiff-appellant.
 Lowell Steven Fine (argued), Alembik, Fine & Callner, P.A., Atlanta, Ga., John M. Slack, III, Jackson & Kelly, Charleston, W.Va., Hedy M. Powell, Julia Feliciano, Wyeth-Ayerst Laboratories, Michael T. Scott, Reed, Smith, Shaw & McClay (on brief), Philadelphia, Pa., for defendant-appellee.
 Stuart M. Gerson, Asst. Atty. Gen., Michael Jay Singer, William G. Cole, Civ. Div., U.S. Dept. of Justice, Michael J. Asture, General Counsel, Dept. of Health and Human Services, Washington, D.C., Catherine C. Lorraine, Associate Chief Counsel for Enforcement, Food & Drug Admin., Rockville, Md., for amicus curiae.
 Before WIDENER, PHILLIPS and MURNAGHAN, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 Tyressa J. Rohrbough and her parents, Donald E. and Debby S. Rohrbough, appeal from the district court's grant of summary judgment against them in their products liability action against Wyeth Laboratories, Inc. (Wyeth). Because we agree with the district court that plaintiffs adduced insufficient evidence that Wyeth's product caused the injuries in question, we affirm.
 
 
 2
 In reviewing the district court's grant of summary judgment, we view the underlying facts in the light most favorable to the Rohrboughs. See Helm v. Western Maryland Ry. Co., 838 F.2d 729, 734 (4th Cir.1988). Tyressa Rohrbough was born on September 14, 1983. On November 29, 1983, Tyressa received her first diphtheria, tetanus, and pertussis (DTP) vaccination, which caused her no ill effects. Tyressa received her second DTP shot on February 2, 1984, and later that day she suffered a seizure that necessitated her hospitalization. Wyeth manufactured the DTP vaccine given to Tyressa on February 2. Tyressa was released from the hospital after experiencing no further seizures, and she received a one-half dose of DT[1] vaccine, also manufactured by Wyeth, on March 22 or 23, 1984. Tyressa suffered a second seizure and was rehospitalized. Since that time, Tyressa continues to suffer repeated seizures and developmental retardation.
 
 
 3
 The Rohrboughs filed a seven-count products liability action against Wyeth on June 6, 1985, alleging that the vaccines proximately caused Tyressa's condition. Plaintiffs' theories of liability included design and manufacturing defects, breach of express and implied warranties, and failure to warn.[2] After ample time for discovery, and almost four years after plaintiffs commenced this action, Wyeth filed two motions for summary judgment, one of which concerned the issue of causation.[3] On August 10, 1989, the district court entered its order granting summary judgment for Wyeth, and plaintiffs now appeal. 719 F.Supp. 470.
 
 
 4
 An essential element of plaintiffs' cause of action is proof that defendant's vaccine caused plaintiffs' injuries, and proof of causation must be by expert testimony. Cf. Hicks v. Chevy, 358 S.E.2d 202, 205 (W.Va.1987).[4] In addition, an expert's opinion as to proximate cause must be stated in terms of reasonable probability. See Hovermale v. Berkeley Springs Moose Lodge No. 1483, 165 W.Va. 689, 271 S.E.2d 335, 340 (1980).[5]
 
 
 5
 As the district court noted, plaintiffs have offered the testimony of three experts: Dr. John Tilelli, an expert in pediatrics and toxicology; Dr. Patricia Crumrine, an expert in pediatric neurology and the minor plaintiff's treating physician; and Dr. William Cox, an expert in pathology. Although we decline to base our decision on the existence or absence of any particular language, the district court's grant of summary judgment for Wyeth was appropriate and called for unless the testimony of at least one of these experts fairly establishes that it is reasonably probable that Wyeth's vaccine caused Tyressa Rohrbough's condition.
 
 
 6
 Dr. Tilelli's affidavit states that "[u]se of the descriptive term Lennox Gastaut to describe the seizure pattern displayed by Tyressa Rohrbough would not contraindicate DPT vaccine as a possible cause of her injuries."[6] Dr. Tilelli does not claim that the vaccine probably caused Tyressa Rohrbough's injuries. Rather, Dr. Tilelli only asserts that use of the term Lennox Gastaut would not rule out the vaccine as a possible cause.
 
 
 7
 In her deposition, Dr. Crumrine, Tyressa Rohrbough's treating physician, testified concerning the cause of her patient's condition as follows:
 
 
 8
 Q: Is it correct, Dr. Crumrine, that there's no way that sitting here today that you can say that her seizure on February 2, 1984, was attributable to the DPT vaccine she had or attributable to the otitis media[7] and fever?
 
 
 9
 A: That's correct.
 
 
 10
 Q: Let me break that down a little bit so I can be sure that I understand.
 
 
 11
 I guess you can't say, then, that to a reasonable degree of medical certainty or scientific certainty that DPT vaccine caused Tyressa's first seizure on February 4, [sic] 1984?
 
 
 12
 A: Versus being caused by otitis....
 
 
 13
 Q: Otitis media or fever.
 
 
 14
 A: That's correct.
 
 
 15
 * * * * * *
 
 
 16
 Q: Is it fair to state that based on your review of the records and based on your care and treatment of Tyressa that at this time you are simply unable to formulate an opinion to a reasonable degree of medical certainty as to what the cause of her seizure disorders is?
 
 
 17
 A: I think it's a reasonable statement.
 
 
 18
 Q: And one that you agree with?
 
 
 19
 A: Yes.
 
 
 20
 (Footnote added.) The above questions admittedly were propounded in terms of a somewhat higher standard of proof than plaintiffs must satisfy. See Hovermale v. Berkeley Springs Moose Lodge No. 1483, 165 W.Va. 689, 271 S.E.2d 335, 340 (1980) (to warrant finding by jury of proximate cause, medical testimony need only state matter in terms of a reasonable probability, not reasonable medical certainty). Although it stretches the imagination to say that Dr. Crumrine's testimony would have been any different had the questions incorporated a differing standard of proof, that is, that she would have given her opinion that the vaccine was the reasonably probable cause in spite of her testimony that she could not determine a cause to a reasonable degree of medical certainty, we need not rely on intuition. The question is not what Dr. Crumrine would have said, but what she did say, and she simply did not testify that the vaccine was a reasonably probable cause of the infant's condition. Thus, Dr. Crumrine's deposition testimony and Dr. Tilelli's affidavit are insufficient evidence upon which a jury verdict for plaintiffs might be based and thus defeat defendant's motion for summary judgment.[8]
 
 
 21
 Like the testimony of his colleagues, Dr. Cox's deposition testimony does not support plaintiffs' sought-for conclusions. Dr. Cox testified at length concerning the possible ways by which DTP vaccine might cause neurological damage such as that displayed by Tyressa Rohrbough. When questioned concerning the cause of Tyressa's problems, however, Dr. Cox declined to state that in his opinion Tyressa's injuries were caused by Wyeth's vaccine:
 
 
 22
 Q: Are all of the possible mechanisms that you've described all hypotheses with respect to whether they occur in children?
 
 
 23
 A: Yes, sir, that's correct.
 
 
 24
 Q: None have been confirmed, is that correct?
 
 
 25
 A: That's correct.
 
 
 26
 Q: And you can't as you sit here right now tell me whether any of the hypotheses are the one that occurred in Tyressa Rohrbough, is that correct?
 
 
 27
 A: That's correct.
 
 
 28
 Q: In fact, it may have been none of them, is that correct?
 
 
 29
 A: That's possible. That's possible.
 
 
 30
 (J.A. at 995.) When asked directly whether he had an opinion as to the cause of the minor plaintiff's condition, Dr. Cox testified as follows:
 
 
 31
 My opinion is that following the second immunization shot that she received, that the manifestations that she subsequently demonstrated were consistent with those which have been repeatedly demonstrated in the literature to be associated with a reaction to the pertussis component of DPT.
 
 
 32
 (J.A. at 945.) This testimony, the most favorable to plaintiffs that Dr. Cox provided in his deposition, still does not suffice to establish an issue of proximate cause for summary judgment purposes. As the district court recognized, all Dr. Cox established was that a temporal link existed in other cases between the vaccine and a reaction like that displayed by Tyressa Rohrbough. Dr. Cox did not testify that the literature supported a causal link between the vaccine and the reaction in other cases, much less that the vaccine caused the reaction in this particular case.
 
 
 33
 We agree with the district court that, if limited to the evidence set forth above, summary judgment in this case would be "unproblematic." In an affidavit attached to plaintiffs' response to defendant's motion for summary judgment, however, Dr. Cox states:
 
 
 34
 It is my opinion that the DPT vaccine administered to Tyressa Rohrbough on February 2, 1984 caused the neurological injuries from which she has suffered and continues to suffer.
 
 
 35
 This statement alone would appear to defeat defendant's motion for summary judgment unless, as the district court found, Dr. Cox's affidavit is in such conflict with his earlier deposition testimony that the affidavit should be disregarded as a sham issue of fact.
 
 
 36
 In Barwick v. Celotex Corp., 736 F.2d 946 (4th Cir.1984), this court considered a situation in which a plaintiff, when faced with a summary judgment motion, submitted an affidavit that contradicted his prior sworn deposition testimony:
 
 
 37
 "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.
 
 
 38
 Barwick, 736 F.2d at 960 (citations omitted).[9] Dr. Cox's deposition contrasts starkly with his affidavit. After explaining at length on deposition the possible theories by which DTP vaccine can cause injury similar to that of Tyressa, Dr. Cox refused, when questioned directly concerning the cause of Tyressa Rohrbough's injuries, to give as his opinion that a causal link existed between the vaccine and the minor plaintiff's symptoms. Yet months later, when faced with defendant's motion for summary judgment, Dr. Cox boldly gave his opinion by way of affidavit that the vaccine caused the injuries in question. In addition, like the affidavit in Barwick, Dr. Cox's affidavit is very nearly entirely conclusory and devoid of specific facts to support his opinion.[10]
 
 
 39
 Dr. Cox's assertion in his affidavit on the issue of causation is also contradicted by other portions of his deposition. Dr. Cox readily admitted in his deposition that he was not an expert on Lennox Gastaut, that he was not an expert in pediatric neurology, and that he relied on clinical neurologists to make clinical diagnoses. On deposition Dr. Cox also stated that DTP vaccine does not cause Lennox Gastaut, and that if the minor plaintiff had Lennox Gastaut it would be unrelated to her DTP vaccination. Dr. Crumrine, who is a pediatric neurologist, stated in her deposition that Tyressa Rohrbough fits the clinical picture of Lennox Gastaut. In his affidavit, however, Dr. Cox states that "[i]t is my opinion that Tyressa Rohrbough does not suffer from Lennox-Gastaut." Thus, Dr. Cox's deposition testimony reflecting deference due to a lack of expertise is contradicted by the contrary assertion in his affidavit on the same subject matter.
 
 
 40
 Finally, Dr. Cox's affidavit also conflicts with another portion of his deposition unrelated to causation. In his deposition Dr. Cox was questioned concerning the difference between the pertussis vaccine Tyressa Rohrbough was given, a whole cell vaccine, and an acellular vaccine.[11] Dr. Cox first agreed that "there is no data to indicate that she would have had any different reaction had she received an acellular vaccine." Later, Dr. Cox was asked the question a second time:
 
 
 41
 Q: Do you have an opinion, doctor, as to whether Tyressa Rohrbough would have suffered from the same type of seizure disorder that she suffers from if she had received an acellular vaccine?
 
 
 42
 A: As I understand the present literature, based on comparison of reactions to acellular versus DPT, I would suspect that she would not have had a seizure, but that's based on present written literature and specifically I'm referring to the T cell type that was utilized in this country in at least three different studies if not four now.
 
 
 43
 Q: There were no seizures in either the whole cell group or the T cell group in the studies you're referring to, isn't that correct?
 
 
 44
 A: That's correct.
 
 
 45
 Q: So the incidence of seizures for both groups was zero, is that right?
 
 
 46
 A: That's correct.
 
 
 47
 Q: How can you make a comparison between the two groups as to the incidence of seizures or neurological injury if neither group had a seizure?
 
 
 48
 A: I'm basing it on reactions, the reactions that they showed both locally and systemically and I'm drawing an inference from that. That's why I said I suspect.
 
 Then, in his affidavit, Dr. Cox states:
 
 49
 It is my opinion, to a reasonable degree of medical certainty, that if Tyressa Rohrbough had received an acellular DPT vaccine rather than the whole-cell DPT vaccine manufactured by Wyeth that she would not have received the injuries from which she presently suffers.
 
 
 50
 Thus, Dr. Cox's opinion as to whether Tyressa Rohrbough might have reacted differently to an acellular vaccine ranges from no difference, to a suspicion of a difference, to a medically certain difference.
 
 
 51
 Given the conflicts between Dr. Cox's affidavit and his deposition testimony, the district court was left not with a genuine issue of material fact, but with trying to determine which of several conflicting versions of Dr. Cox's testimony was correct. See Barwick, 736 F.2d at 960. We hold that the district court was justified in disregarding the affidavit. We agree with the district court that it "may not represent the considered opinion of the doctor himself, but rather an effort on the part of the plaintiffs to create an issue of fact." In the absence of the Cox affidavit, plaintiffs have not met their burden of coming forward with enough evidence that a jury could find that defendant's vaccine probably caused plaintiffs' injuries. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 252, 106 S.Ct. 2505, 2510, 2512, 91 L.Ed.2d 202 (1986).[12]
 
 
 52
 The judgment of the district court is accordingly
 
 
 53
 AFFIRMED.
 
 
 
 [1]
 DT vaccine contains only the diphtheria and tetanus toxoids and not the pertussis component that plaintiffs assert initiated Tyressa's seizure disorder. Although plaintiffs alleged in their complaint that the DT vaccine was also a cause of Tyressa's injuries, on appeal plaintiffs challenge only the district court's grant of summary judgment as to the DTP vaccine and do not pursue their claims with respect to the DT vaccine
 
 
 [2]
 Because we affirm the district court's grant of summary judgment on the issue of causation, we do not consider the district court's alternative findings and the Rohrboughs' other assignments of error
 
 
 [3]
 Plaintiffs also argue that the district court's grant of summary judgment was premature because it was based on "limited discovery depositions." Our review of the record reveals, however, that plaintiffs had more than adequate time for discovery. Moreover, if plaintiffs genuinely were concerned that defendant's motion was premature, plaintiffs should have sought relief under Fed.R.Civ.P. 56(f). See Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)
 
 
 [4]
 See also Fitzgerald v. Manning, 679 F.2d 341 (4th Cir.1982)
 
 
 [5]
 In Virginia, the rule is "a reasonable degree of medical certainty." Fitzgerald, 679 F.2d at 350
 
 
 [6]
 Lennox Gastaut is a clinical term used to describe a certain type of seizure disorder and does not represent a particular cause of the seizures. Thus, while there exists some disagreement as to whether Tyressa Rohrbough fits the clinical definition of Lennox Gastaut, that disagreement centers on her symptoms rather than what caused her condition. In addition, the parties and the various experts appear to use "DPT" and "DTP" interchangeably to refer to the diphtheria, tetanus, and pertussis vaccine in issue. Thus, while we use "DTP" in our opinion, see Physicians' Desk Reference 878 (1990), quotations employing the term "DPT" refer to the same vaccine
 
 
 [7]
 Otitis media is an ear infection that can produce fever
 
 
 [8]
 Plaintiffs also attempt to rely on several documents that were not before the district court when it considered defendant's motion for summary judgment, including a letter from Dr. Crumrine to plaintiffs' attorney dated February 1, 1985, some four years before her deposition, in which she states that "there is a probable relationship" between Tyressa's seizures and her DPT/DT immunizations. Whether or not probable relationship comes close enough to probable cause to support a jury finding of proximate cause, which is itself problematic, we decline to consider the letter as well as the other documents not considered by the district court
 Plaintiffs first attempted to supplement the record by filing in the district court a motion "to file necessary discovery documents for appeal purposes," which the district court denied because the plaintiffs had not filed the documents in question or brought them to the attention of the district court, as it considered the various papers in evaluating the motion for summary judgment. Plaintiffs inserted the documents into the joint appendix anyway, and defendant moved in this court to strike those portions of the appendix. We denied the motion, subject to our reconsideration of the matter. Upon reconsideration of the issue, we conclude that the district court correctly denied the motions; that the documents are not properly before us; that defendant's motion to reconsider our denial of its motion to strike part of the joint appendix is well taken; and the same is granted. The documents thus are not a part of the record we consider in this appeal.
 Plaintiffs based their motion in the district court on the Local Rules for the Northern District of West Virginia, which provide that certain discovery materials shall be retained by the parties as custodians. That Rule 2.08(b)(1) did not relieve plaintiffs of a duty to file the documents in response to defendant's summary judgment motion is demonstrated by Rule 2.08(b)(3): "If depositions, interrogatories, requests for documents, requests for admissions, answers or responses ... are necessary to a pretrial or post-trial motion, the portions to be used shall be filed with the Clerk at the outset of the trial or at the filing of the motion insofar as their use can be reasonably anticipated by the parties having custody thereof." Thus, the local rules afford plaintiffs no justification for filing materials on appeal that were not considered in the district court, and we are of opinion that the district court's denial of plaintiffs' motion was not an abuse of discretion. See Samuels v. Wilder, 871 F.2d 1346, 1354 (7th Cir.1989). Moreover, most of the proffered documents, including the Crumrine letter, are unsworn hearsay that could not properly be considered on a summary judgment motion in any event under Fed.R.Civ.P. 56(e).
 
 
 [9]
 In Barwick, we relied upon opinions from the Second and Ninth Circuits that support our holding in this case: Radobenko v. Automated Equip. Corp., 520 F.2d 540 (9th Cir.1975), and Perma Research and Dev. Co. v. Singer Co., 410 F.2d 572 (2d Cir.1969). Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir.1986), Foster v. Arcata Assocs., Inc., 772 F.2d 1453, 1462 (9th Cir.1985), cert. denied, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986), and Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365-66 (8th Cir.1983), also support our holding, while Kennett-Murray Corp. v. Bone, 622 F.2d 887, 893-95 (5th Cir.1980), has reserved the question and Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir.1986), has taken an intermediate position apparently making motive the determinative factor
 
 
 [10]
 As an alternative basis for disregarding Dr. Cox's affidavit, the district court determined that the affidavit did not meet the requirement that affidavits submitted in connection with summary judgment motions be supported by specific facts. See Fed.R.Civ.P. 56(e). Although we also note that the affidavit does lack any factual basis for Dr. Cox's opinion, because we conclude that the district court properly disregarded the affidavit due to its conflict with Dr. Cox's deposition, we need not determine whether the lack of factual support in the Cox affidavit might be an independent basis for our decision
 
 
 [11]
 A whole cell pertussis vaccine contains whole, killed cells of the Bordetella pertussis bacterium. An acellular pertussis vaccine contains only part of the pertussis bacterium and therefore only a fraction of the endotoxins that some suspect may cause adverse reactions. See White v. Wyeth Laboratories, Inc., 40 Ohio St.3d 390, 533 N.E.2d 748, 749 (1988)
 The United States has filed its brief as amicus curiae. It points out that the Department of Health and Human Services' public health experts have concluded that alternative pertussis vaccines to the whole cell vaccine involved in this case have not yet been adequately shown to be safe and effective for licensure in the United States.
 
 
 [12]
 Plaintiffs also seek to establish causation by claiming that, under the National Vaccine Injury Compensation Program, 42 U.S.C. Secs. 300aa-10 et seq., Tyressa Rohrbough is considered to have a DTP-related injury. Whether or not that is true, the Vaccine Injury Table in the federal act simply has no bearing on the issue of causation in this civil tort action, and the act expressly renders the table inadmissible. See 42 U.S.C. Sec. 300aa-23(e)