**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SALVATORE E. ROTA; CONNIE S.
ROTA, individually and on behalf of
and as next friend for CHASITY R.
ROTA, a minor; KRISTI S. ROTA,
Plaintiffs-Appellants,

v.                                                              No. 98-1807

CONSOLIDATION COAL COMPANY, a
corporation,
Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Frederick P. Stamp, Jr., Chief District Judge.
(CA-96-33-1)

Argued: January 25, 1999

Decided: April 5, 1999

Before WILKINS, MICHAEL, and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** J. Michael Benninger, WILSON, FRAME, BENNINGER
& METHENY, P.L.L.C., Morgantown, West Virginia, for Appellants.
Robert Mason Steptoe, Jr., STEPTOE & JOHNSON, Clarksburg,
West Virginia, for Appellee. **ON BRIEF:** Herbert G. Underwood,

Amy M. Smith, Stephen D. Williams, STEPTOE & JOHNSON, Clarksburg, West Virginia; Robert M. Vukas, CONSOL, INC., Pittsburgh, Pennsylvania, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Salvatore Rota, his wife, and his two dependent children sued Mr. Rota's employer, Consolidation Coal Company (Consol) in West Virginia state court, claiming that Consol deliberately exposed Mr. Rota to a toxic chemical that accelerated permanent damage to his liver. Consol removed the case to federal court on the basis of diversity of citizenship and amount in controversy. The district court denied the Rotas' motion to remand and granted Consol's motion for summary judgment. We affirm.

I.

Rota worked as an underground coal miner for Consol from 1975 to 1993. In 1988 he was diagnosed with liver disease. In 1990 Rota began working on a longwall unit where he was required to handle a hydraulic fluid containing a chemical called Solcenic 3A. Solcenic 3A contains an agent called MIBC. Rota remained with the longwall unit until 1993, when he injured his back. When he saw a doctor in 1994 to obtain clearance to return to work, Rota was diagnosed with chronic Hepatitis C. Following that diagnosis, the Rotas filed suit in West Virginia state court, claiming that Mr. Rota's preexisting liver condition had been exacerbated by his work in Consol's mines. Specifically, they alleged that Mr. Rota's exposure to Solcenic 3A (containing MIBC) caused his liver disease to advance more quickly than it otherwise would have. The Rotas sued the company under section 23-4-2 of the West Virginia Code, which allows an employee to

2

recover from his employer for workplace injury, if the employer, with "deliberate intention," exposed the employee to a "specific unsafe working condition." The Rotas did not specify the amount of damages they sought.

Consol immediately removed the case to federal court, and the Rotas filed a motion to remand, asserting that the district court lacked jurisdiction because Consol had not established that the amount in controversy would exceed $50,000. The district court denied the motion to remand. After discovery the district court granted Consol's motion for summary judgment on the grounds that the Rotas' claims were barred by the statute of limitations and that the Rotas could not establish the essential elements of a claim under section 23-4-2 of the West Virginia Code. The Rotas now appeal the district court's summary judgment order and its denial of their motion to remand.[1]

II.

The Rotas first argue that this case was not properly before the district court because Consol did not show that the Rotas' claims exceeded the $50,000 value required to establish diversity jurisdiction.[2] The Rotas, who did not allege a specific damage figure in their complaint, argue that the district court's estimate of their damages as greater than $50,000 was speculative. This estimate was particularly speculative, they add, because any state workers' compensation Mr. Rota received would have reduced the amount recoverable under section 23-4-2. We disagree with the Rotas' analysis.

Mr. Rota's lost wages for the period in question total more than $90,000, according to an unrefuted affidavit submitted by Consol. Mr. Rota responds that he had applied for workers' compensation,[3] and a

_____

[1] The motions of the parties to supplement the record on appeal are granted.

[2] At the time of removal, the amount in controversy had to exceed $50,000 for diversity jurisdiction. Since that time, Congress has increased the amount to $75,000. See 28 U.S.C. § 1332 (1993 & Supp. 1998); Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 205 (1996).

[3] Mr. Rota's claim for workers' compensation has since been denied.

compensation award would have prevented him from recovering on his wage claim in this suit. However, jurisdiction is determined as of the time of removal, see St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 293 (1938) ("[E]vents occurring subsequent to removal which reduce the amount recoverable . . . do not oust the district court's [diversity] jurisdiction."), and the district court here was not in a position to forecast the outcome of the workers' compensation claim as of that time.[4] Moreover, the Rotas' complaint alleges other damages including permanent liver injury, medical bills, pain and suffering, the "loss of ability to enjoy life," and loss of companionship and consortium. These assertions of damage, combined with Mr. Rota's lost wage claim, establish the required jurisdictional amount.

III.

The Rotas next argue that the district court erred in granting summary judgment to Consol on the ground that the Rotas failed to establish all of the elements required to prove liability under West Virginia's "deliberate intention" statute. We also affirm on this issue because the Rotas have not established that MIBC caused Mr. Rota's liver condition to deteriorate. Causation is one of the required elements of section 23-4-2 of the West Virginia Code. And although the Rotas need not show a precise, certain causal link to forestall summary judgment, they still must establish by a "reasonable probability"

_____

[4] There is some debate among the circuits about the proper standard for assessing the value of an unspecified damage claim. See 14C Charles Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3725, at 89. Some courts have held that the defendant must prove by a preponderance of the evidence that the amount sought in the complaint meets the jurisdictional threshold. See e.g., Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1357 (11th Cir. 1996). Others have used "legal certainty," "reasonable probability," and even "inverse legal certainty" standards. See e.g., White v. J.C. Penney Life Ins. Co., 861 F. Supp. 25, 27 (S.D. W.Va. 1994) (legal certainty); Thompson v. Fritsch, 966 F. Supp. 543 (D.C. Mich. 1997) (reasonable probability); Hale v. Billups of Gonzales, Inc., 610 F. Supp. 162, 163-64 (D.C. La. 1985) (inverse legal certainty). This circuit has not addressed the issue. Because our conclusion in this case would be the same under any of these standards, however, we decline to adopt a particular standard here.

4

that Consol's chemicals exacerbated Mr. Rota's preexisting liver injury. See Hovermale v. Berkeley Springs Moose Lodge No. 1483, 271 S.E.2d 335, 340 (W.Va. 1980).

The Rotas have not met their burden under this standard. The Rotas' gastroenterology expert, Dr. Don Seibert, noted that Mr. Rota's cirrhotic deterioration was "well within the norm for [his] disease." And although Dr. Seibert noted the "potential for an environmental cofactor," he also testified that he didn't know "[w]hether it [MIBC] contributed to [Rota's liver disease] in terms of his course." Dr. Seibert also said that he couldn't "say with a relative degree of certainty that [MIBC] is an inciting agent," and that "[w]hether it contributed to [the disease] in terms of its course, [he] prefer[red] not to say no, because [he] d[id]n't know."

Another of the Rotas' experts, Dr. Alan Ducatman, was similarly equivocal. When asked whether he would testify that MIBC accelerated Mr. Rota's liver disease, Ducatman answered "[u]nknown . . . . you've asked me to give a yes or no answer to something for which I don't know the answer and my answer is I don't know and I don't." Finally, the Rotas' expert toxicologist noted that he was prepared to testify that MIBC was a toxicologic risk factor, but he offered no opinion on causation in Mr. Rota's case.

The Rotas note that one of their experts, Dr. Ducatman, considered MIBC "a risk for the outcome that [Rota] experienced," and that a report issued by the National Institute of Occupational Safety and Health stated that while "MIBC is not known to be a liver or kidney toxin . . . . workers with impaired liver or kidney function should avoid prolonged exposure" to the chemical. These proffers, however, are not enough to establish that exposure to MIBC caused Mr. Rota's liver condition to deteriorate, even under the "reasonable probability" standard applied on summary judgment.

Because the Rotas failed to establish causation, summary judgment to Consol was appropriate on their deliberate intention claim under section 23-4-2 of the West Virginia Code.[5]

_____

[5] Because we affirm on the failure to show causation, we need not reach the statute of limitations question.

IV.

The district court's order denying the motion to remand and its judgment entered on the award of summary judgment to Consol are

AFFIRMED.

6