# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**James C. Weimer,**
**Petitioner Below, Petitioner**

**vs)  No. 17-0668** (Kanawha County 16-AA-99)

**Public Service Commission of West Virginia,**
**Respondent Below, Respondent**

**and**

**Robert Weiford,**
**Intervenor Below, Respondent**

**FILED**

**June 29, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner James C. Weimer, pro se, appeals the June 28, 2017, order of the Circuit Court of Kanawha County affirming the September 29, 2016, decision of the West Virginia Public Employees Grievance Board denying his grievance challenging the appointment of Respondent Robert Weiford to a "Engineer Senior" position for which petitioner also applied. Respondent Public Service Commission of West Virginia ("PSC"), by counsel Belinda B. Jackson, filed a summary response.[1]  Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner is a long-term "Engineer Associate" with the PSC. On February 27, 2015, the PSC posted two job classifications for the same opening within its division of gas pipeline safety. According to the testimony of Elizabeth Sharp, the PSC's human resources manager, the posting of the single job opening under both "Engineer Senior" and "Technical Analyst Senior" classifications was not unusual and occurs to expand the applicant pool and "find the best suitable

---

[1]There was no response filed by Mr. Weiford.

1

candidate for the position." Both petitioner and Mr. Weiford, then an employee of the West Virginia American Water Company ("WVAWC"), applied for the position as engineers. The "Engineer Senior" posting described the job opening as:

> At an administrative and *supervisory level* assisting with the functions of the gas pipeline safety division, this position will be responsible for the following duties: assist with the day to day management of inspection schedules and staff, including time sheet and expense account; *assist [the] director in development of division policies and procedures and monitoring budget*; collect, generate[,] and furnish data and paperwork associated with the federal pipeline safety grant program and assist with the annual program review; write and evaluate compliance actions for enforcement; *act in place of the director when [the] director is unavailable; lead investigations* of pipeline accidents and incidents, including collection evidence[,] providing expert testimony . . . .

(Emphasis added.).

According to the testimony of Rebecca White of the West Virginia Division of Personnel ("DOP"),[2] a person such as petitioner or Mr. Weiford would know to apply due to the "Engineer Senior" posting which "established" the job opening. To be eligible to fill the vacancy, an applicant was required to meet the minimum qualifications listed in the posting, which were "eight years of full-time or equivalent part-time paid employment as a licensed professional engineer in a responsible capacity in charge of engineering projects." The PSC interviewed all seven minimally-qualified applicants. Mary Friend, the director of the PSC's gas pipeline division, developed the interview questions in consultation with Ms. Sharp. Ms. Friend determined that the questions should focus on the supervisory skills that an applicant would need to fill the position. The interview panel consisted of Ms. Friend, who was a licensed professional engineer, and two managers of different divisions within the PSC, with Ms. Sharp also present in order to ensure compliance with applicable employment policies. Ms. Friend and the two managers scored each applicant according to their answers to the questions previously developed by Ms. Friend and asked of every applicant. Once the scores were tabulated, Mr. Weiford ranked first with a score of 140. Petitioner ranked sixth out of the seven applicants, with a score of 125.

Consequently, Ms. Friend checked Mr. Weiford's references including Jeff Ferrell, Mr. Weiford's direct supervisor at his former job with WVAWC. Mr. Ferrell informed Ms. Friend that Mr. Weiford had a good work ethic with "no issues" and that he would recommend Mr. Weiford for the "Engineer Senior" position. Ms. Friend recommended to Michael A. Albert, the PSC's chairman, that the position be offered to Mr. Weiford. Following Mr. Albert's approval of Ms. Friend's request, Ms. Sharp sent the necessary paperwork to the DOP. Ms. White testified that the DOP validated that Mr. Weiford met the minimum qualifications for the "Engineer Senior" position:

---

[2] Ms. White served as the administrative services manager of the DOP's personnel transaction review unit.

. . . In looking at his application, he's with [WVAWC] since 1996 to present. In going over his duties, all of these duties I deemed, along with the first [p]ersonnel [s]pecialist review, they are professional engineer in nature. Though his license was not obtained until 2005, we would not give credit until the start of 2005 when he actually obtained his [p]rofessional [e]ngineer license.

So with that, the dates from 2005 to present, that would be a little over nine years. So[,] he would meet the minimum qualifications for [the "Engineer Senior" position].

Ms. White further testified that it is a legitimate practice for an agency such as the PSC to select a candidate out of the applicant pool prior to having that candidate's minimum qualifications validated by the DOP, explaining that "[w]e do not govern that." Accordingly, on May 20, 2015, the DOP sent Mr. Weiford a notice of eligibility stating that he was qualified for the "Engineer Senior" position within the PSC's gas pipeline division. On June 15, 2015, the PSC appointed Mr. Weiford to the position with the title of manager of the gas pipeline division.

On June 25, 2015, petitioner filed a grievance challenging Mr. Weiford's appointment, requesting that it be rescinded and that he be appointed to the position or that he be given an equivalent open position. Petitioner also moved that Mr. Albert, the PSC's chairman, recuse himself from the initial levels of the grievance process given Mr. Albert's former employment as an attorney for WVAWC. Mr. Albert subsequently scheduled the level one grievance hearing for July 10, 2015, and denied petitioner's motion for his recusal, finding that petitioner "failed to explain or establish any basis for disqualification." On June 30, 2015, Mr. Weiford was allowed to intervene in petitioner's grievance. The level one hearing was rescheduled to August 24, 2015, and, at petitioner's request, held as a conference. Petitioner's grievance was denied at level one. At level two, the parties participated in meditation which did not lead to a resolution.

At level three, an administrative law judge ("ALJ") with the West Virginia Public Employees Grievance Board held an evidentiary hearing on May 16, 18, and 19, 2016. Petitioner, Mr. Weiford, Ms. Sharp, Ms. White, Ms. Friend, and the two managers, who interviewed the applicants with Ms. Friend during the hiring process, all testified at the hearing. Mr. Weiford testified with regard to discipline that he had received at his former job with WVAWC due to a safety incident. Ms. Friend testified that, while she would have preferred that Mr. Weiford had disclosed the incident during his interview, she did not believe that the incident was significant because the same supervisor at WVAWC who disciplined Mr. Weiford also recommended him for the "Engineer Senior" position:

Q. Do you think that's something that his reference and his direct supervisor, who actually gave him the safety reprimand, should have disclosed to you when you checked his reference?

A. Yes. Because I asked an open-ended question, "Is there anything else I need to know?"

3

Q. Does that say to you that he did not consider it to be a significant issue?

A. If . . . his boss didn't raise it, yes, I would not consider that a significant issue.

By decision dated September 29, 2016, the ALJ denied petitioner's grievance. The ALJ noted that, because this case was not a disciplinary matter, petitioner had the burden to prove his case and found that petitioner failed to prove that he was the most qualified candidate for the "Engineer Senior" position. Petitioner appealed the ALJ's decision to the Circuit Court of Kanawha County, which affirmed the denial of his grievance by order entered June 28, 2017.

Petitioner now appeals the June 28, 2017, order upholding the ALJ's decision. "A final order of the [Grievance Board's ALJ], made pursuant to W. Va. Code[ §§ 6C-2-1 through 6C-2-8], and based upon findings of fact, should not be reversed unless clearly wrong." Syl. Pt. 3, *Armstrong v. W.Va. Div. of Culture and History*, 229 W.Va. 538, 729 S.E.2d 860 (2012) (quoting Syl. Pt. 1, *Randolph County Board of Ed. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989)). In syllabus point one of *Darby v. Kanawha County Board of Education*, 227 W.Va. 525, 711 S.E.2d 595 (2011), we held:

> "Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an [ALJ], a circuit court is not permitted to substitute its judgment for that of the [ALJ] with regard to factual determinations. Credibility determinations made by an [ALJ] are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo." Syllabus Point 1*, Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

Because this case was not a disciplinary matter, "[t]he grievant bears the burden of proving the grievant's case by a preponderance of the evidence." W. Va. C.S.R. § 156-1-3. Proof by a preponderance of the evidence requires that a party present "sufficient evidence that the existence of a fact is more probable or likely than its nonexistence." *Jackson v. State Farm Mut. Auto. Ins. Co.*, 215 W.Va. 634, 640, 600 S.E.2d 346, 352 (2004) (quoting *Hovermale v. Berkeley Springs Moose Lodge No. 1483*, 165 W.Va. 689, 697 n.4, 271 S.E.2d 335, 341 n.4 (1980)).

On appeal, the parties dispute the number of the assignments of error that petitioner is raising. Petitioner states that he raises all eleven assignments of error listed in his notice of appeal. The PSC counters that, in petitioner's brief, his arguments represent "a moving target." In *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996), we stated that "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." In *State v. Honaker*, 193 W.Va. 51, 56 n.4, 454 S.E.2d 96, 101 n.4 (1994), we further stated that we "take as non[-]existing all facts that do not appear in the [appendix] record and will ignore those issues where the missing record is needed to give factual support to the claim."

Here, we find that many issues, such as petitioner's contentions that he did not receive the

"Engineer Senior" position due to bias[3] and that Mr. Weiford's less-than-perfect employment history should have disqualified him from the position, are not factually supported. Accordingly, based on our review of the record, we conclude that the ALJ's finding that all such issues could be summarily rejected was not clearly wrong. As found by the ALJ:

> [Petitioner] spent an abnormal amount of time hammering away at ancillary points. [Petitioner] had a theory of the case, which is not necessarily accepted by this trier of fact. While certain facts/points were interesting, such points of interest were generally not substantial with regard to an essential element of this case. For example[,] the non-disclosure of a fact that [petitioner] believes is substantial regarding the successful applicant, [Mr. Weiford], in and of itself does not establish a substantial flaw [in the hiring process].

Therefore, like the ALJ, we focus on the essential issue in this case: whether petitioner was the most qualified candidate for the "Engineer Senior" position. We concur with the ALJ's conclusion that petitioner failed to meet his burden of proving that he was the most qualified candidate. First, though petitioner argues that he and the other applicants did not receive notice that the opening was for a supervisor rather than just an engineer/technical specialist, we find that the job posting made it clear that the position was "supervisory" in nature with duties such as "act[ing] in place of the director when [the] director is unavailable."

Because of the abundance of supervisory duties, petitioner next argues that the position was misclassified and that such a determination involves either a question of law or an application of the law to the facts. Assuming arguendo that review is de novo, we find that the circuit court correctly resolved this issue in its June 28, 2017, order by finding that, pursuant to W. Va. C.S.R. § 143-1-4.4, job classification was the prerogative of the DOP. At the time that the PSC posted an opening for an "Engineer Senior," W. Va. C.S.R. § 143-1-4.4(a) (2012) specifically provided that "[t]he [DOP] *shall* consider the class specification in allocating positions and *shall* interpret it as follows: *(a) Class specifications are descriptive only and are not restrictive.*"[4] (Emphasis added.). Furthermore, "[t]he use of a particular expression of duties, qualifications, requirements, or other attributes *shall not* be held to exclude others not mentioned."[5] *Id.* (Emphasis added.). In this case,

---

[3]Petitioner alleges that the selection process was biased against him because of his lack of prior employment with WVAWC and because of his age. At the time that the PSC hired Mr. Weiford as the manager of the gas pipeline division, petitioner was sixty-seven years old. At the evidentiary hearing before the ALJ, Ms. Friend, who wanted to hire a "Engineer Senior," testified that she was sixty-two years old and that age was not a factor in the selection process. Ms. Friend further testified that the PSC "hire[s] the best candidate for the job" regardless of the identity of their previous employers.

[4]As result of a 2016 amendment, W. Va. C.S.R. § 143-1-4.4 now explicitly provides that "the [DOP] has the *sole authority* for the classification process." (Emphasis added.).

[5]As we recently noted in *Brickstreet Mutual Insurance Company v. Zurich American* (Continued . . .)

5

Ms. White testified that the "Engineer Senior" posting "established" the job opening for which petitioner applied. Therefore, upon our review of the hearing transcript, we find that it was clear from Ms. White's testimony that the DOP found that the position was classified correctly.

We note that Ms. White and the DOP's personnel transaction review unit validated that Mr. Weiford, the successful applicant, met the minimum qualifications for the "Engineer Senior" position. Petitioner disagrees with that determination. However, at the evidentiary hearing before the ALJ, Ms. White testified as to how the personnel transaction review unit determined that Mr. Weiford met the minimum job qualifications. Accordingly, the ALJ rejected petitioner's argument, finding that "all applications for positions in the classified service undergo a series of four total reviews designed to evaluate an applicant's qualifications and to make a determination of whether the applicant meets the minimum qualification requirements." Based on our review of the record, we find that the ALJ's finding was not clearly wrong.

Finally, we note petitioner's objection to the selection process that the PSC undertook to fill the "Engineer Senior" position. We find that the ALJ's rejection of this argument was not clearly wrong. The ALJ found:

> Pursuant to the evidence of this matter, [petitioner] was ranked sixth out of the seven candidates. [Mr. Weiford,] [t]he selected candidate, ranked first among the seven candidates. . . . The selection process at issue in this grievance is theoretically designed to treat each applicant in the same manner. Each applicant was scored on the same selection criteria and asked to provide the same information and to answer the same questions. Each member of the selection panel testified at level three that he or she [did] not consider age to be an appropriate criterion for the selection of the applicant. [Petitioner] did not demonstrate that he was treated any differently from any other candidate in the selection process.

Accordingly, upon our review of the record, we find that the ALJ was not clearly wrong in finding that petitioner failed to meet his burden of proving, by a preponderance of the evidence, that he was the most qualified candidate for the "Engineer Senior" position. Therefore, we conclude that the circuit court properly affirmed the ALJ's denial of petitioner's grievance.

For the foregoing reasons, we affirm the circuit court's June 28, 2017, order upholding the Grievance Board's September 29, 2016, decision denying petitioner's grievance.

Affirmed.

**ISSUED:** June 29, 2018

---

*Insurance Company*, __ W.Va. __. __ and n. 15, __ S.E.2d __, __ and n.15 (April 5, 2018), the use of the word "shall" in a regulation should ordinarily be afforded a mandatory connotation. (citing Syl. Pt. 1, *Nelson v. West Virginia Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982)).

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating.


**DISQUALIFIED:**

Chief Justice Margaret L. Workman