**Wauneta DREW, Personal Representative of the Estate of Eddie Drew, Deceased, Appellant (Plaintiff),**

v.

**LeJAY'S SPORTSMEN'S CAFE, INC., a Wyoming Corporation, Appellee (Defendant).**

**No. 90-38.**

Supreme Court of Wyoming.

March 4, 1991.

Bernard Q. Phelan, Cheyenne, for appellant.

G.G. Greenlee and Kathleen B. Simon of Murane & Bostwick, Casper, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

In this appeal we determine the nature and scope of the duty of care which a restaurant owner owes to a customer who chokes on food and is in imminent need of medical attention. Appellant Wauneta Drew filed a wrongful death action against LeJay's Sportsmen's Cafe, Inc. (LeJay's) of Jackson, Wyoming, alleging that her thirty-seven year old son, Eddie Drew, died on July 5, 1986, because of the restaurant's negligence in failing to render first aid and summon emergency help after restaurant employees knew or had reason to know that Eddie, a customer, was in imminent need of medical attention.

Following discovery and before trial, the restaurant moved for summary judgment contending that as a matter of law the restaurant owed its customer neither a duty to summon emergency medical help nor a duty to render first aid until emergency medical help arrived. The trial court granted the restaurant partial summary judgment, holding that the restaurant did not owe its customer a duty to render first aid until emergency medical help arrived. At trial, over Mrs. Drew's objection, the trial court instructed the jury that the restaurant owed its customer a duty to summon medical assistance within a reasonable

time, but that it did not owe a duty to provide medical training to its food service personnel or medical rescue services to its customers. The jury returned a verdict in favor of the restaurant.

Mrs. Drew appeals both the trial court's grant of partial summary judgment and the judgment entered on the jury's verdict based on the trial court's jury instruction on the duty owed by the restaurant to its customer.

We affirm in all respects.

Mrs. Drew states the issues in this way:

1. Whether the court erred in granting Partial Summary Judgment wherein the court determined, as a matter of law, what specific conduct would be reasonable under the circumstances.

2. Whether the court erred in rejecting the general duty of care owed to invitees set forth in Section 314A of the *Restatement of Torts, Second.*

The restaurant restates the issues as follows:

I. What is the duty of a restaurant owner or his employee to a patron who becomes ill or incapacitated while an invitee at the restaurant?

II. Did the trial court properly define and instruct the jury on the defendant's legal duty?

The record from which we work consists only of the summary judgment materials since no trial transcript was submitted. In support of its motion for summary judgment, the restaurant submitted the transcript of the deposition of Ted Gonzales, the deceased's friend who was with him at the restaurant; the transcript of the deposition of Howard Hutchings, director of the environmental health program in the Division of Health and Medical Services, State of Wyoming; and a portion of the transcript of the deposition of Gretchen Zuber, executive director of the Wyoming Heart Association. In opposition to the restaurant's motion, Mrs. Drew submitted excerpted portions of the transcripts of the depositions of Leland Walter, the restaurant's owner; Claudette Schlauger, the restaurant's waitress that served the deceased; Kathy Collet, another of the res-

taurant's waitresses; Howard Hutchings and Gretchen Zuber.

Because the trial court's holding as to the nature and scope of the restaurant's duty of care was the same for the purposes of both the summary judgment motion and the jury instruction, our task is to determine whether that holding was correct as a matter of law. We shall summarize the facts framing the presentation of this legal question in the light most favorable to Mrs. Drew. The evidence describing the events of the incident in which Mrs. Drew's son choked on his food comes, in large measure, from the transcript of the deposition of Ted Gonzales, the son's companion during the incident. The parties do not dispute the essential facts.

## FACTS

Eddie Drew and Ted Gonzales drove from Rock Springs to Jackson on July 3, 1986, to "party" over the Independence Day weekend. After frequenting the bars for several hours on the 4th of July and continuing into the early hours of the 5th, they arrived at LeJay's restaurant about 1:30 a.m., July 5, where they continued to drink while waiting for a table and after they were seated. Drew started choking after only a few bites of his meal.

Gonzales' testimony about his reaction to Drew's choking demonstrates that he was slow to realize the seriousness of the situation. When Drew could no longer talk and did not move, Gonzales finally sought help. Gonzales' testimony is confusing about the sequence of those he spoke to for help and what kind of help he asked for. Initially, he simply asked three or four times for a cloth to wipe Drew's mouth, but he testified that he also said several times, "This man is dying over here." After several efforts to get the attention of restaurant employees regarding Drew's choking, a threat was made to Gonzales that the police would be called and Gonzales said to call them. From the testimony Gonzales talked to waitresses, the cashier, and the cook. It is not clear how many times Gon-

zales asked these employees for help, or in what order, but he did ask more than once.

Some time during all of this activity, Gonzales had asked customers near Drew for help, and they placed Drew on the floor and gave him mouth-to-mouth resuscitation. When the police arrived, they continued giving mouth-to-mouth resuscitation to Drew. Although Gonzales told the police Drew was dying and to call an ambulance, this was not done right away. It is not clear from the record how long the wait was for an ambulance to be called or who made the call.

By 2:38 a.m. the ambulance was en route to the restaurant; it began its return trip to the hospital by 2:52 a.m., arriving at 2:55 a.m. Efforts during the ambulance ride and at the hospital failed to revive Drew. At the hospital a two-inch by two-inch chunk of meat was removed from Drew's trachea. That chunk had caused Drew to have cardiorespiratory arrest. Despite a flight for life to a Denver hospital and further medical attention there, Drew was pronounced dead at 5:51 p.m.

## DISCUSSION

At the jury trial, Mrs. Drew's counsel offered two jury instructions, "C" and "D," purporting to correctly state the law as found in Restatement (Second) of Torts, § 314A (1965). The Restatement section provides:

§ 314A. Special Relations Giving Rise to Duty to Aid or Protect

(1) A common carrier is under a duty to its passengers to take reasonable action

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An innkeeper is under a similar duty to his guests.

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

The trial court rejected Mrs. Drew's proposed jury instructions "C" and "D."

### Instruction C

You are instructed that a possessor of land who holds it open to the public has a duty to the members of the public, who enter the premises in response to its invitation, to take reasonable action to give them first aid after it knows or has reason to know that they are ill or injured and to care for them until they can be cared for by others.

### Instruction D

To prevail in its cause of action against the defendant, the plaintiff must prove by a preponderance of the evidence the following:

1. That the defendant was a possessor of land and held it open to the public;

2. That Eddie Drew, deceased, entered defendant's land in response to defendant's invitation;

3. That Eddie Drew, deceased, became ill or injured while he was in the premises of the defendant;

4. That the defendant through its agents or employees was negligent by failing to take reasonable action to give first aid to Eddie Drew after it knew or had reason to know that he was ill or injured, and to care for him until he could be cared for by others.

5. That, as approximate cause of defendant's failure to take reasonable action to give first aid and care for Eddie Drew, he died.

6. That Wauneta Drew, Glenn Drew, Gary Drew, Dennis Drew and Marvena Houke have suffered damages in the form of lost pecuniary support and lost companionship, society and comfort.

In determining whether an issue has been proved by a preponderance of the evidence, you should consider all of the

evidence bearing upon that issue regardless of who produced it. The existence of such proposition must be more probable than its nonexistence.

The trial court instructed the jury about the restaurant's duty of care to Drew in this language:

A restaurant whose employees are reasonably on notice that a customer is in distress and in need of emergency medical attention has a legal duty to come to the assistance of that customer. However, a restaurant does not have a duty to provide medical training to its food service personnel, or medical rescue services to its customers who become ill or injured through no act of omission of the restaurant or its employees. A restaurant in these circumstances meets its legal duty to a customer in distress when it summons medical assistance within a reasonable time.

In her appeal Mrs. Drew argues that the Restatement (Second) of Torts § 314A is the appropriate rule of law. She claims that a customer who becomes ill or injured inside a business establishment is virtually in the custodial care of those persons operating the business. She asserts that the business invitor-invitee relationship is a special relationship that gives rise to a duty on the invitor's part to render first aid to the invitee.

First, she notes that in *Mostert v. CBL & Associates, et al.*, 741 P.2d 1090 (Wyo. 1987), this court considered § 314A when it determined the nature and scope of the duty of care owed by a theater owner to its patron. Against the factual backdrop of the 1985 severe thunderstorm and ensuing 100–year flood which hit the City of Cheyenne, this court held that the theater owner as business-invitor owed its patron as business-invitee an affirmative duty to exercise ordinary care for the patron's safety which includes an obligation to advise the patron of off-premises danger that might reasonably be foreseeable. *Mostert*, 741 P.2d at 1096.

However, this court did not adopt § 314A or any part of it in *Mostert*. The majority simply agreed with the principle that, on the unusual facts of that case, the business-invitor owed a duty to its patrons to protect them against unreasonable harm by warning of an external risk of which it possessed superior knowledge. The holding in *Mostert* reached only the duty addressed by § 314A(1)(a) and did not adopt the Restatement section to achieve its result. Mrs. Drew argues for adoption of the duty addressed by § 314(1)(b), concerning the provision of first aid to ill or injured patrons. Since *Mostert* does not speak to this issue or adopt or endorse Restatement (Second) of Torts § 314A, it is of little help.

Additionally, Mrs. Drew presents cases from other jurisdictions which discuss the duty of protection and aid owed by a business-invitor to an invitee. We will compare those cases to Mrs. Drew's claims.

In *Hovermale v. Berkeley Springs Moose Lodge No. 1483*, 165 W.Va. 689, 271 S.E.2d 335 (1980), a bartender instructed friends of a customer who became ill and collapsed to take the customer to his car outside in the parking lot to "sleep it off." No one checked on the customer that night. He was found the following evening, having died of a heart attack within two to five hours after being placed in his car. Citing § 314A, the court held that the business-invitor owes an ordinary duty to render aid to its invitee after he knows or has reason to know that the invitee is ill or injured. *Id.*, 271 S.E.2d at 338.

We fail to see the significance of *Hovermale* for this case in connection with Mrs. Drew's position that the duty of care owed by the business-invitor encompasses more than promptly calling for qualified medical assistance and includes the actual administration of first aid until qualified medical assistance arrives. In *Hovermale* the invitee did not allege that the business-invitor owed a duty to administer first aid or direct medical care to the ill invitee. That case concerned only whether the duty to render aid was breached by the business-invitor's failure to recognize that Hovermale was ill and needed assistance.

Similarly, we find no value in *Personal Representative Estate of Starling v. Fisherman's Pier, Inc.*, 401 So.2d 1136 (Fla.

1981), arising from the drowning of a drunk customer who had passed out, was left lying on a pier near the ocean, and had rolled off the pier and into the water. Echoing *Hovermale*, the court simply recognized the business proprietor's ordinary duty to render aid to a person exposed to a known condition of danger. There was no discussion relating to first aid and medical assistance.

Having considered Mrs. Drew's authorities, we now turn to examine the restaurant owner's position that its duty of care to its customer is fulfilled if, after having notice of the customer's illness or injury, the business proprietor summons medical assistance within a reasonable time. One case offered by LeJay's, *Breaux v. Gino's, Inc.*, 153 Cal.App.3d 379, 200 Cal.Rptr. 260 (1984), is particularly instructive. There, the California court focused on the nature and extent of restaurants' duty to come to the assistance of their customers who become ill or need medical attention. The California court observed that loss compensability is an "essentially political" question which the courts may decide if neither the constitution nor the legislature has spoken on the subject. The court recognized a duty existed, and held that the legislature had already decided the question of the extent of duty in that by statute restaurants meet their legal duty to a customer in distress when they summon medical assistance within a reasonable time. *Id.*, 200 Cal.Rptr. at 262.

We agree with the analysis offered by the California court. Neither the Wyoming Constitution nor our statutes speak to this duty, nor have we been directed to any applicable regulations. Consequently, this issue is appropriately decided in Wyoming by court decision. We find no basis in this jurisdiction for disagreeing with the extent of the duty as declared by the able trial judge, the summoning of medical assistance within a reasonable time. We are concerned that a specific requirement of first aid, rather than aid in the form of a timely call for professional medical assistance, would place undue burdens on food servers and other business-invitors.

In the first instance, the likelihood of an invitee requiring first aid in this sort of circumstance is remote. LeJay's argues persuasively that approximately 270 billion meals are consumed annually in the United States, while only 3,000 choking deaths occur each year. These deaths are not further subdivided into categories such as eating or objects placed in the mouth, but it is apparent in any case that the likelihood of a food server being faced with this circumstance is very remote. Beyond the basic numbers involved, the chance of first aid succeeding in this circumstance is even more remote. Eddie Drew's condition was caused by a 2-inch by 2-inch chunk of meat lodged in his trachea. It is open whether any maneuver short of a surgical procedure would have made a difference.

Offset against the slim chance of this sort of event occurring on its premises are the burdens placed on the food server such as LeJay's by being required to provide first aid. Courses in first aid techniques require both time and money. Annual recertification classes are required in CPR and the Heimlich maneuver. Because employee turnover in the food service industry is high, continual training efforts might be required to provide a staff capable of providing first aid. This duty would apply to every food server, regardless of size, across the state. The same duty that rests on large scale restaurants would apply to the 24-hour convenience store, grocery stores, movie theaters, and corner newsstand. It would apply as well to all business-invitors, whatever products or services they offer to the public.

We note one further practical limitation. Ms. Zuber, of the Wyoming Heart Association, testified that lay persons receiving CPR training are advised that they may exercise their own discretion in choosing to administer CPR in any given situation. Clearly a business-invitor's employees remain lay persons and cannot be compelled to perform first aid against their better judgment. It would not be appropriate to either remove the employee's discretion or hold the employer liable if it is exercised. The only persons expected to perform rescue techniques regardless of circumstances

are the professional medical responders called for just that purpose. Whether that call is made within a reasonable time is the appropriate factual issue for jury consideration.

Our prior decisions have held the duty to an invitee is that of reasonable care under all the circumstances. *Ruhs v. Pacific Power & Light*, 671 F.2d 1268, 1272 (10th Cir.1982). Nothing has been said previously in Wyoming about the extent of that duty in these circumstances. While we agree with Restatement (Second) of Torts § 314A to the extent that we acknowledge reasonable care must be exercised in this circumstance, we are satisfied that duty is met when medical assistance is summoned within a reasonable time, and decline to adopt § 314A.

Affirmed.

CARDINE, J., filed a dissenting opinion, in which URBIGKIT, C.J., joined.

CARDINE, Justice, dissenting, with whom URBIGKIT, Chief Justice, joins.

My problem is with the following instruction:

"A restaurant whose employees are reasonably on notice that a customer is in distress and in need of emergency medical attention has a legal duty to come to the assistance of that customer. However, a restaurant does not have a duty to provide medical training to its food service personnel, or medical rescue services to its customers who become ill or injured through no act or omission of the restaurant or its employees. A restaurant in these circumstances meets its legal duty to a customer in distress when it summons medical assistance within a reasonable time."

This instruction, which purports to set forth a restaurant owner's duty, is a poor statement of law because of the inclusion of the last sentence, "A restaurant in these circumstances *meets its legal duty* to a customer in distress when it summons medical assistance within a reasonable time." (emphasis added) The sentence is argumentative, confusing, and is tanta-

mount to a directed verdict for defendant. It is never proper for an instruction *on the law* to inform a jury that a party has or has not "met" its duty. *See Bush v. Jackson*, 191 Colo. 249, 552 P.2d 509 (1976) and *Durrant v. Pelton*, 16 Utah 2d 7, 394 P.2d 879 (1964); *cf. Cervelli v. Graves*, 661 P.2d 1032 (Wyo.1983). The court's comment conveys to the jury the idea that the court has concluded that defendant met (satisfied) its legal duty. Jurors properly give considerable weight to comments and instructions from the judge—who is viewed as impartial and unbiased. This type of statement in an instruction on the law should, thus, be assiduously avoided.

If the above statement must be included in the instruction, then to provide balance and be fair to plaintiff the court should also add:

"On the other hand, if the restaurant employees failed reasonably to notice that the customer was in distress or to come to his assistance or to summon medical assistance within a reasonable time, then the restaurant has failed to meet the duty imposed upon it by law and your verdict should be for the plaintiff."

Neither of these are statements of law. Both are argument and should not be part of an instruction. It is enough to instruct the jury on the law—describe the duty imposed and stop without suggesting to the jury that either party has or has not "[met] its legal duty" in the case before the jury.

I am troubled also by the statement that trained restaurant personnel may choose whether to administer CPR or not in any given situation and that, as the court states in its opinion, a "business-invitor's employees remain lay persons and cannot be compelled to perform first aid against their better judgment." I am not sure what is meant by this statement, but assume that negligence in the exercise of better judgment will result in restaurant liability. If the assumption is correct, I am in agreement with the sentence in the opinion.

A lay person, trained in first aid—CPR—traveling down the highway who comes

upon an accident has no legal duty to stop and help injured persons even though he may be able to help. Restatement, Second, Torts § 314, comment c (1965). He can travel on, leaving the injured to bleed and die. At most, there may be a moral obligation to stop and give assistance. On the other hand, an innkeeper who invites guests to his place of business which he operates for a profit may not refuse to give assistance to his patrons as is within his ability to provide. Restatement, Second, Torts § 314A comment f *and see* illustrations 1 and 5. Thus, if the innkeeper has an employee trained in CPR, there is a duty "to come to the assistance of that customer" as stated in the above instruction. Said another way, the business proprietor is not a stranger who can stand idly by, refuse to provide assistance that is available, and let his customer die. *Personal Representative of Starling's Estate v. Fisherman's Pier, Inc.,* 401 So.2d 1136, 1137 (Fla.App. 1981) and *Hovermale v. Berkeley Springs*

*Moose Lodge No. 1483,* 165 W.Va. 689, 271 S.E.2d 335, 338 (1980). So too if a major resort hotel or casino carries a doctor on its staff, it may not refuse reasonable medical assistance to patrons in distress. *Cf. Stahlin v. Hilton Hotels Corp.,* 484 F.2d 580, 583 (7th Cir.1973). In short, I would hold that a business proprietor must exercise reasonable care in serving its patrons and when in the exercise of that reasonable care the proprietor knows or reasonably ought to know that a customer is in distress and in need of assistance, the proprietor must come to the assistance of the customer and provide such assistance, aid and help as is within his present ability to provide.