Christopher CAMPBELL, Appellant

v.

EITAK, INC. T/D/B/A Katana, Appellee.

Superior Court of Pennsylvania.

Argued Nov. 29, 2005.

Filed Feb. 10, 2006.

Danyl S. Patterson, Philadelphia, for appellant.

David C. Ray, Doylestown, for appellee.

Before: JOYCE, ORIE MELVIN and TAMILIA, JJ.

OPINION BY JOYCE, J.:

¶ 1 Appellant, Christopher Campbell ("Campbell"), appeals from the May 16, 2005 order granting summary judgment in favor of Appellee, Eitak, Inc, t/d/b/a Katana ("Katana"). Following review, we affirm.

¶ 2 On March 25, 2002, Campbell was a patron at Katana, a Japanese restaurant in Wilkes–Barre. On that day, Campbell ordered chicken teriyaki as part of his lunch meal. When Campbell swallowed the first bite of the chicken, it became lodged in his throat, rendering him unable to breathe for approximately thirty seconds. Campbell Deposition, 12/1/03, at 49–50. During this period of time, he walked to the cashier counter, advised an employee that he was having difficulty breathing, and asked that she call 911. Takeshi Ei, one of the restaurant's owners, was standing nearby and suggested that Campbell attempt to dislodge the chicken by drinking water. *Id.* at 52–55. Campbell went into the men's room, cupped his hands, and drank "a couple of handfuls" from the sink faucet. *Id.* at 55, 66.

¶ 3 Mr. Ei entered the restroom and asked how Campbell was doing. When Campbell replied that he was not feeling better, Mr. Ei asked if Campbell wanted a

call placed to 911. When Campbell responded affirmatively, Mr. Ei left the restroom. *Id.* at 57–58.

¶ 4 When Campbell emerged from the restroom approximately five minutes later, he was informed that 911 had been called. *Id.* at 59–60. He returned to the restroom, and remained there until an ambulance arrived. *Id.* at 61.

¶ 5 Campbell explained to the EMTs that he was having difficulty breathing and talking due to the piece of chicken lodged in his throat. *Id.* at 63. The EMTs provided oxygen and transported Campbell to a local hospital. *Id.* at 64. Following surgical removal of the bolus, it was determined there was a tear in Campbell's esophagus. He was then transported by helicopter to the University of Pennsylvania Hospital in Philadelphia where he underwent surgery to repair the esophageal tear. *Id.* at 76–77.

¶ 6 Campbell filed suit against Katana, alleging negligence for failure to have policies and procedures for responding to a choking emergency. He also alleged negligence for failure to have personnel trained in performing the Heimlich maneuver, and for failure to administer appropriate first aid. In response, Katana asserted that the duty of care owed to Campbell was satisfied by summoning emergency rescue personnel, and that the restaurant had no duty to perform medical procedures that even medical technicians and medical doctors were unable to perform.

¶ 7 After the pleadings were closed, Katana filed a motion for summary judgment, claiming that the restaurant had no duty to provide emergent care, other than to summon an ambulance, and asserting that there was no basis for restaurant personnel to provide first aid, including the Heimlich maneuver. The trial court agreed, and entered judgment in favor of Katana. This timely appeal followed.

¶ 8 Campbell presents one issue for our consideration:

Whether the trial court committed legal [error] in granting Defendant's Motion for Summary Judgment and determining that no genuine issues of material fact exist such that a finder of fact could determine that defendant was negligent in its failure to properly respond to plaintiff's choking emergency.

¶ 9 We begin by setting forth our scope and standard of review. As this Court has recognized:

[O]n appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.

*Gutteridge v. A.P. Green Services,* 804 A.2d 643, 651 (Pa.Super.2002) (citations omitted).

¶ 10 Concerning the grant of summary judgment itself:

Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material

fact against the moving party. Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

*Id.* (citations omitted).

¶ 11 Campbell maintains that the trial court erred in concluding that there were no genuine issues of material fact. He argues that there is ample evidence to support his claims of negligence against Katana, "such that a finder of fact could determine that Katana breached its duty to Mr. Campbell by failing to have proper policies and procedure in place to respond to his choking emergency and by negligently undertaking Mr. Campbell's care, as to cause a worsening of his condition." Appellant's Brief, at 8. We disagree. Viewing the record in the light most favorable to Campbell as the non-moving party, we conclude there is no dispute relating to the facts giving rise to this case. Rather, there is simply a dispute as to the duty of care owed to Campbell under the circumstances that existed at Katana when a piece of chicken became lodged in Campbell's throat.

¶ 12 The thrust of Campbell's argument on appeal is that Katana owed a duty of care to Campbell as a business invitee. There is no question that, as a restaurant patron, Campbell was a business invitee. *See, e.g., Gutteridge, supra,* 804 A.2d at 656 ("A business invitee is a person who is invited to enter or remain on the land of another for a purpose directly or indirectly connected with business dealings with the possessor of the land." (quoting *Emge v. Hagosky,* 712 A.2d 315, 317 (Pa.Super.1998)). Classifying Campbell as a business invitee does not, however, establish the particular duty owed to him by the restaurant under the circumstances of this case.

¶ 13 While this appears to be a case of first impression for our State's appellate courts, the issue of the duty owed by a restaurant to a choking patron has been examined by the appellate courts of some of our sister states. Although the decisions from other jurisdictions are clearly not binding on this Court, they may provide guidance and well-reasoned analysis in resolving the issue before us.

¶ 14 In *Drew v. LeJay's Sportsmen's Café, Inc.,* 806 P.2d 301 (Wyo.1991), Drew and his friend Gonzales stopped at a restaurant to eat after frequenting a number of Jackson bars on the evening of July 4, 1986, and into the early morning hours of July 5. The two continued to drink while waiting for their table and when they were seated.

¶ 15 Drew began choking after taking a few bites of his meal. Gonzales sought help once he appreciated the seriousness of the situation. However, his request for assistance was met with a threat to call the police, a threat welcomed by Gonzales. Gonzales also enlisted the assistance of other customers, some of whom responded by placing Drew on the floor and initiating mouth-to-mouth resuscitation. When the police arrived, they continued the mouth-to-mouth resuscitation. An ambulance was eventually called, although it was not clear when or by whom. The ambulance crew's efforts to revive Drew were unsuccessful. He was transported to a hospital, where a two-inch by two-inch piece of meat was removed from his trachea. Despite further medical attention, Drew did not survive.

¶ 16 At trial, a request for a jury instruction based on the Restatement (Second) of Torts § 314A[1] was rejected. The trial court instead instructed the jury that:

> A restaurant whose employees are reasonably on notice that a customer is in distress and in need of emergency medical attention has a legal duty to come to the assistance of that customer. However, a restaurant does not have a duty to provide medical training to its food service personnel, or medical rescue services to its customers who become ill or injured through no act or omission of the restaurant or its employees. A restaurant in these circumstances meets its legal duty to a customer in distress when it summons medical assistance within a reasonable time.

*Id.* at 304.

¶ 17 Following a defense verdict, Drew's Estate appealed, again asserting that § 314A set forth the appropriate duty of care owed by a restaurant to its customers. The Wyoming Supreme Court disagreed, finding instructive a California case, *Breaux v. Gino's, Inc.*, 153 Cal.App.3d 379, 200 Cal.Rptr. 260 (1984), in which the court concluded that a California statute defined the legal duty owed by restaurants to their customers in distress as requiring the summoning of medical assistance within a reasonable time.[2]

¶ 18 The Wyoming court noted that neither the Wyoming Constitution nor the Wyoming statutes addressed a restaurant's duty to a patron in distress, nor were there any applicable regulations directed to restaurants. Consequently, the matter was appropriately decided by court decision. Affirming the judgment entered on the jury verdict, the court stated, "We find no basis in this jurisdiction for disagreeing with the extent of the duty as declared by the able trial judge, the summoning of medical assistance within a reasonable time." *Drew, supra,* 806 P.2d at 305.

¶ 19 In *Lee v. GNLV Corp.,* 117 Nev. 291, 22 P.3d 209 (2001), the Nevada Supreme Court analyzed a trial court's grant of summary judgment in favor of a restaurant where a patron, Sturms, choked and subsequently died. In the *Lee* case, the decedent's Estate argued that the restau-

---

1. Section 314A provides:

    § 314A. Special Relations Giving Rise to Duty to Aid or Protect (1) A common carrier is under a duty to its passengers to take reasonable action (a) to protect them against unreasonable risk of physical harm, and (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others. (2) An innkeeper is under a similar duty to his guests. *(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.* (4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other. (Emphasis added.)

2. In the *Breaux* case, an assistant restaurant manager called for an ambulance as soon as he became aware that a patron was choking. No one attempted to administer first aid to the customer, who later died. Quoting the statutory provision confirming the absence of any obligation to remove or attempt to remove food that has become stuck in another person's throat, the Court of Appeals held that the "statute establishes as a matter of law that a restaurant meets its legal duty to a patron in distress when it summons medical assistance within a reasonable time." *Breaux, supra,* 153 Cal.App.3d at 382, 200 Cal.Rptr. at 262. *See also, Parra v. Tarasco, Inc.,* 230 Ill.App.3d 819, 172 Ill.Dec. 516, 595 N.E.2d 1186 (1992) (restaurant not liable for failing to rescue a customer from a danger not caused by the restaurant; further, no liability will be imposed for failing to assist in removing food from customer's throat because such action is not required by Section five of the Illinois Choke–Saving Methods Act).

rant breached its duty to Sturms because the restaurant employees failed to administer the Heimlich maneuver when Sturm's upper airway became blocked by food he consumed in the restaurant. Citing the *Breaux* and *Drew* cases, the Nevada court concluded that, "under the circumstances presented in this case, GNLV's employees acted reasonably as a matter of law by rendering medical assistance to Sturms[3] and summoning professional medical aid within a reasonable time. In this case, GNLV's employees were under no legal duty to administer the Heimlich maneuver to Sturms." *Lee, supra*, 117 Nev. at 299, 22 P.3d at 214.[4]

¶ 20 We find the reasoning adopted by the Wyoming and Nevada courts persuasive. In absence of any legislative pronouncement, we hold that the prompt summoning of medical assistance satisfies a restaurant's duty to a patron who is choking. By calling 911 within minutes of Campbell's reported distress, Katana discharged its duty to Campbell as a matter of law.

¶ 21 Examining the record in a light most favorable to Campbell, we find that

there were no genuine issues of material fact to preclude entry of summary judgment. Further, because we find that Katana discharged its duty to its patron by summoning medical assistance within a reasonable time, we conclude that the trial court neither committed error of law nor abused its discretion in granting summary judgment in favor of Katana.[5]

¶ 22 Order affirmed.[6]

---

3. The medical assistance rendered included checking the pulse of the unconscious Sturms, and initiating CPR after medical assistance had been summoned.

4. A Florida Court reached a similar result in *Coccarello v. Round Table of Coral Gables, Inc.* 421 So.2d 194 (Fla.Dist.Ct.App.1982). In the *Coccarello* case, a patron choked on food. A physician who was also dining in the restaurant attempted to aid the patron, and restaurant employees called for assistance within five minutes. The court held that the restaurant's duty was to take reasonable action to give or secure first aid, and that the proprietor's response was reasonable.

5. Campbell also claims that his condition was worsened by following Mr. Ei's recommendation that he drink water. We agree with the trial court that Mr. Ei's suggestion to drink water did not constitute taking charge of Campbell, nor was Campbell helpless at the

time so as to give rise a duty under the Restatement (Second) of Torts § 324—Duty of One Who Takes Charge of Another Who Is Helpless. Rather, calling 911 constituted rendering aid and "it is clear and free from doubt that [Katana] called 911 in a reasonably prudent manner." Trial Court Opinion, 5/16/05, at 12.

6. The trial court examined a business owner's duty to an invitee generally, rather than a restaurant owner's duty to a choking patron. As a result, the court employed a broader analysis to reach its conclusion that Katana was entitled to summary judgment. However, we may affirm based on grounds different from those considered by the trial court. *See Frank v. Frank,* 833 A.2d 194 (Pa.Super.2003); *Weber v. Lynch,* 237 Pa.Super. 48, 346 A.2d 363 (1975) (*en banc*).